UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TIMOTHY WAYNE POINTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-01506 |
| | ) | Judge Nixon/Brown |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**To: The Honorable John T. Nixon, Senior United States District Judge.**

## REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration through its Commissioner, denying plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i) and 423(d), and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 12) be **DENIED** and the Commissioner's decision **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed protectively for DIB and SSI on May 6, 2010. (Doc. 10, pp. 53-56, 117-30, 156, 178)[1] Plaintiff alleged an initial disability onset date of August 11, 2005 (Doc. 10, pp. 53-56, 61, 75, 155), claiming that he was unable to work because of Still's Disease and left knee injury (Doc. 10, pp. 53-54, 61-62, 75-76, 160). Plaintiff's application was denied initially on December

---

[1] References to page numbers in the Administrative Record (Doc. 10) are to the page numbers that appear in bold in the lower right corner of each page.

17, 2010, and upon reconsideration on May 3, 2011. (Doc. 10, pp. 53-62) On June 22, 2011, plaintiff requested a hearing before an administrative law judge (ALJ). (Doc. 10, pp. 85-86) A hearing was held in Nashville on November 29, 2012 before ALJ John Daughtry. (Doc. 10, pp. 29-52) Vocational Expert (VE) James Adams testified at the hearing. (Doc. 10, pp. 29, 31, 48-51) Plaintiff was represented at the hearing by attorney Robert Parker. (Doc. 10, pp. 29, 31)

The ALJ entered an unfavorable decision on February 1, 2013. (Doc. 10, pp. 9-27) Plaintiff filed a request with the Appeals Council on March 18, 2013 to review the ALJ's decision. (Doc. 10, pp. 7-8) The Appeals Council denied plaintiff's request on May 22, 2014, whereupon the ALJ's decision became the final decision of the Commissioner. (Doc. 10, pp. 1-6)

Plaintiff brought this action through counsel on July 23, 2014. (Doc. 1) Plaintiff filed a motion for judgment on the administrative record on November 10, 2014 (Doc. 12), the Commissioner responded on December 21, 2015 (Doc. 15), and plaintiff replied on December 22, 2015 (Doc. 16). This matter is now properly before the court.

## I. REVIEW OF THE RECORD[2]

### A. Medical Evidence

Plaintiff treated at Stonecrest Medical Center (Stonecrest) during the period August 16-19, 2005 for viral myocarditis, shock, and acute renal insufficiency. (Doc. 10, pp. 229-33, 331-441) He was transferred from Stonecrest to Vanderbilt University Medical Center (Vanderbilt) on August 19, 2005 (Doc. 10, pp. 261-62, 501), where he was treated for "presumed" onset of Adult Still's Disease[3] and complications/health issues related thereto (Doc. 10, pp. 261-90, 482-505). Plaintiff

---

[2] The excerpts of the medical record addressed below are those necessary to support the court's analysis of plaintiff's claims of error. The remainder of the medical record is incorporated herein by reference, as is the entire transcript of the hearing.

[3] Still's Disease – "systemic onset juvenile rheumatoid arthritis," "a form of juvenile idiopathic ['pathologic condition of unknown cause or spontaneous origin'] arthritis accompanied by systemic manifestations such as spiking

was discharged from Vanderbilt to home on September 3, 2005 (Doc. 10, pp. 287-90, 479-82), but continued to followup for Still's Disease related health issues at Vanderbilt until October 26, 2009 (Doc. 10, pp. 261-327, 457-78).

Dr. Jerry Surber, M.D., examined plaintiff consultively on September 23, 2010. (Doc. 10, pp. 510-13) Noting that there were "no medical records available for review," the examination proceeded based on plaintiff's subjective representations. (Doc. 10, p. 510) Plaintiff's physical examination was unremarkable. Dr. Surber noted, however, that plaintiff "appeared to put forth very little effort in the grip strength testing." (Doc. 10, pp. 511-12) Dr. Surber's assessment after examining plaintiff was as follows:

> Based on this patient's physical examination today with no medical records available for review, patient would be able to frequently lift or carry up to 10 pounds or occasionally lift and carry 10 to 30 pounds during one-third to one-half of an 8-hour workday. He would be able to stand or walk for 2 to 4 hours or sit for 6 to 8 hours in an 8-hour workday. Impairment-related physical limitations are chiefly in regard to the need for appropriate current diagnostic evaluations concerning his complaints in addition to ongoing management of his other medical problems all coordinated by his primary care physician with appropriate specialty referrals as needed.

(Doc 10, p. 513)

The medical record of evidence shows that Dr. Steven Johnson, M.D., plaintiff's primary care physician, treated plaintiff eleven times from January 27, 2010 to July 20, 2012. (Doc. 10, pp. 579-93) Dr. Johnson first treated plaintiff on January 27 and February 18, 2010 for hemorrhoids, rectal pain, and bleeding. (Doc. 10, pp. 591-92)

Dr. William Huffman, M.D., examined plaintiff consultively on December 6, 2010 to

---

fever, transient rash on the trunk and limbs, hepatosplenomegaly ['any combined disorder of the liver and spleen'], generalized lymphadenopathy ['disease of the lymph nodes usually with swelling'], and anemia *Dorland's Illustrated Medical Dictionary* 543, 847, 912, 1083, 1774 (32nd ed. 2012).

3

determine the range of motion of plaintiff's left knee. (Doc. 10, pp. 515-16) Dr. Huffman noted that plaintiff had "a history of a torn ACL and meniscus in his left knee since 2005 . . . [and was] . . . [l]ast seen by Tennessee Orthopedic Associates in 2005." (Doc. 10, p. 515) Dr. Huffman noted that he was "unable to perform a medical assessment on this patient today" due to the "limited examination," but noted that "the rest of [the] physical examination was normal." (Doc. 10, pp. 515-16)

Dr. Marvin Cohn, M.D., performed a physical residual functional capacity (RFC) assessment on December 16, 2010. (Doc. 10, pp. 518-26) Dr. Cohn concluded that plaintiff could lift up to 20 lbs. occasionally and 10 lbs. frequently, that he could stand/walk/sit about 6 hrs. in an 8-hr. workday, and that he had no pushing/pulling limitations. (Doc. 10, p. 519) Dr. Cohn concluded further that plaintiff was limited to climbing ladders/ropes/scaffolds only occasionally, but had no other postural limitations, and that he had limited ability to reach in all directions, but no other manipulative limitations. (Doc. 10, pp. 520-21) Dr. Saul Juliao, M.D., affirmed Dr. Cohn's assessment as written on April 19, 2011. (Doc. 10, p. 548)

Plaintiff continued his treatment with Dr. Johnson, presenting on January 6, 2011 for sinus congestion, a cough, headache, and fever. (Doc. 10, p. 590) Plaintiff also sought a referral to Dr. Robert Cochran, M.D., for pain management. (Doc. 10, p. 590)

Plaintiff presented to Dr. Cochran for treatment on January 25, 2011. (Doc. 10, pp. 565-575) Dr. Cochran noted on March 28, 2011 that plaintiff represented he had a "flare [up] of back pain, known [as] Still's disease" after working under the hood of his car, that Still's "[m]aybe . . . had something to do with his back pain," but Dr. Cochran "doubt[ed] it . . . [was] . . . anything really serious." (Doc. 10, p. 563)

Dr. Johnson treated plaintiff on June 9 and 14, 2011 for pain, tenderness and soreness on the

4

left side of his head (Doc. 10, pp. 587-89), and on July 20th, 2011 for right side head, ear, and scalp pain (Doc. 10, p. 586). Dr. Johnson noted on June 14th that plaintiff had been diagnosed with Still's in 2004, and that he suffered "chronic pain" from the disease.[4] (Doc. 10, p. 587) A CT scan of plaintiff's head on June 20th was normal. (Doc. 10, p. 593) Dr. Johnson then treated plaintiff for right-side face weakness and headache on August 2, 2011 (Doc. 10, p. 584), for Bell's Palsy and twitching mouth on August 10, 2011 (Doc. 10, p. 583), and for left ear pain and difficulty sleeping on November 18, 2011 (Doc. 10, p. 582).

While still under Dr. Cochran's care, plaintiff testified positive for Cocaine on November 14, 2011. (Doc. 10, p. 561) Dr. Cochran discharged plaintiff from his care on November 18, 2011. (Doc. 10, pp. 560-61) Dr. Cochran wrote the following in his November 18th clinical note:

> Drug screen came back positive for cocaine. Reviewed the chart. He's been on METHADONE. None of his drug screens has shown METHADONE, including the current one. He has missed appointments and has been out of METHADONE on at least one occasion. I'm going to discharge him from my care.

(Doc. 10, p. 561)(capitalization in the original)

Plaintiff presented to Dr. Johnson for "disability papers" and left knee pain on January 12, 2012. (Doc. 10, p. 581) Thereafter, Dr. Johnson wrote a letter "[t]o whom it may concern" on February 34, 2012. (Doc. 10, p. 578) Dr. Johnson's letter is quoted below in relevant part:

> Mr. Pointer suffers from a chronic medical condition called Stills Disease. His diagnosis was made at Vanderbilt University Hospital in 2004. He has been unable to work since 2005. This condition has left him with chronic arthralgias,[5] and has caused significant limitation on standing, sitting and lifting over 20 pounds regularly.

---

[4] This is one of several instances in the records attributable to Dr. Johnson in which he mistakenly reports that plaintiff was diagnosed with Still's Disease in 2004.

[5] Arghralgias – "pain in a joint." *Dorland's* at 150.

5

> He has been followed by Rheumatology at Vanderbilt in the past and remains in chronic disabled status.

(Doc. 10, p. 578)

Plaintiff presented to Premier Orthopaedics on January 26, 2012 for treatment of "ongoing left knee discomfort." (Doc. 10, pp. 576-77) The impression in the clinical note signed by Dr. James Renfro, M.D., was that plaintiff "appear[s] to have an ACL deficient knee and . . . is symptomatic with that." (Doc. 10, p. 510) Dr. Renfro noted further that plaintiff "has an MRI report from 2005 which shows an ACL tear and lateral meniscus tear." (Doc. 10, p. 576)

The medical evidence of record shows that Dr. Johnson treated plaintiff for the last time on July 20, 2012 for "jock itch," prescriptions related to plaintiff's Still's Disease, cracked and painful skin on his feet, and allergies. (Doc. 10, p. 579) Thereafter, Dr. Johnson wrote a second letter '[t]o whom it may concern" on October 18, 2012. (Doc. 10, p. 594) Dr. Johnson's second letter is quoted below in its entirety:

> Mr. Timothy Pointer is a patient of mine and suffers from a chronic medical condition called Still's Disease. His diagnosis was made at Vanderbilt in 2004. He has been unable to work since 2005. This condition has left him with chronic arthralgias, specifically of the pelvis and hips.
>
> This condition has caused significant limitation on standing, sitting, and lifting more than twenty pounds regularly. He has been followed by Rheumatology at Vanderbilt in the past and remains in a chronic disabled state.

(Doc. 12-1, p. 594)

### B. The ALJ's Notice of Decision

Under the Act, a claimant is entitled to disability benefits if he can show his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Corresponding regulations outline the five-step sequential process to determine whether an individual is "disabled" within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2014). While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to identify a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

### III. ANALYSIS

### A. Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. § 405(g); *Gayheart*, 710 F.3d at 374. Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm's or Soc. Sec'y*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence also could support a different conclusion. *Gayheart*, 710 F.3d at 374. "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Comm'r of Soc. Sec.*,

7

474 F.3d 830, 833 (6th Cir. 2006).

## B. Claims of Error

### 1. Whether the ALJ Erred in Not Considering All of Plaintiff's Severe Impairments at Step Two
### (Doc. 12-1, pp. 6-7)

The ALJ determined at step two that plaintiff had the following severe impairments: Still's Disease and left knee injury. (Doc. 10, p. 14) Plaintiff argues that the ALJ erred by not including the following as additional severe impairments: Bell's Palsy, left-side neuralgia, index and long finger metacarpal base fracture with right fifth metacarpal base fracture. (Doc. 12-1, p. 6)

The record reveals that the ALJ did not include the additional severe impairments at the second step that plaintiff contends he should have. At most, the ALJ's failure to include these conditions as additional severe impairments constitutes harmless error, because the ALJ determined that plaintiff had other severe impairments that permitted plaintiff to clear step two. *See Anthony v. Astrue*, 266 Fed.Appx. 451, 457 (6th Cir. 2008)(citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)(failure to find that an impairment was severe at step two was harmless error where other impairments were deemed severe). Plaintiff's first claim of error is without merit.

### 2. Whether the ALJ Erred in Not Being Sufficiently Specific as to Why He Gave Significant Weight to the Opinion of Consulting Physician, Dr. Jerry Surber, M.D.
### (Doc. 12-1, pp. 7-8)

Plaintiff's second claim of error is summarized in the following excerpt quoted from his supporting memorandum:

> [T]he ALJ gave significant weight to Dr. Surber's opinion; however, Dr. Surber's opinion is not sufficiently specific and it is unclear why the ALJ did not use the lower limits on lifting/carrying which were

assigned by Dr. Surber when formulating the RFC.

(Doc. 12-1, p. 7) The RFC assessment reads as follows with respect to the "lower limits on lifting/carrying" at issue: "the claimant has the residual functional capacity to perform light work . . . that is limited to . . . lifting and carrying up to 20 pounds occasionally . . . ." (Doc. 10, p. 17) Stated another way, plaintiff's first claim of error is that the ALJ did not explain why he rejected the low end of Dr. Surber's assessed 10-30 lbs. range, and accepted the mid-point, *i.e.*, 20 lbs., instead.

The law is well established that an ALJ is "procedurally required to 'give good reasons . . . for the weight [he gives a] treating source's opinion.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)(citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "this requirement only applies to treating sources." *See Ealy*, 594 F.3d at 514 (citing *Smith*, 482 F.3d at 876). The ALJ is not required to explain the reasons for the weight he gives to the opinion of nontreating, examining sources. *See Norris v. Comm'r. of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir. 2012)("[A]n ALJ need only explain [her] reasons for rejecting a treating source statement because such an opinion carries 'controlling weight.'")(citing *Smith*, 482 F.3d at 876 ("[T]he SSA requires ALJs to give reasons for only *treating* sources." (italics for emphasis in the original)). Because the ALJ was not required to explain the weight he gave to Dr. Surber's opinion, it follows that the ALJ was not required to explain why he chose the middle of the range rather than the upper end of the range. Plaintiff's second claim of error is without merit.

### 3. Whether the ALJ Erred in Not Properly Considering and Weighing the Weight Given to the Opinion of Treating Physician, Dr. Stephen Johnson, M.D.
### (Doc. 12-1, pp. 8-10)

Plaintiff's third claim of error has two parts: first, the ALJ erred in rejecting Dr. Johnson's opinion; second, the ALJ erred in not "recontact[ing] Dr. Johnson for clarification of his opinion regarding . . . claimant's limitations," *i.e.*, Dr. Johnson's statement in his letters that plaintiff "has

been . . . and remains in a chronic disabled state." (Doc. 12-1, p. 10)

Turning to plaintiff's first argument, under the standard commonly called the "treating physician rule," the ALJ is required to give a treating source's opinion "controlling weight" if two conditions are met: 1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; 2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). However, the ALJ "is not bound by a treating physician's opinions, especially when there is substantial medical evidence to the contrary." *Cutlip v. Sec'y of Health and Human Serv's*, 25 F.3d 284, 287 (6th Cir. 1994). If the Commissioner does not give a treating-source opinion controlling weight, then the Commissioner is required to provide "good reasons" for discounting the weight given. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting SSR 96–2p, 1996 WL 374188 at *5 (SSA)).

The reason in the ALJ's decision to give Dr. Johnson's opinion little weight is quoted below in its entirety:

> In February 2012, Dr. Johnson submitted a brief letter indicating that the claimant has chronic Still's disease, has been unable to work since 2005 and is in chronic disabled status (Exhibit 16F). In October 2012, Dr. Johnson submitted another brief letter stating that the claimant has significant limitations in standing, sitting and lifting more than twenty pounds (Exhibit 18F). **Dr. Johnson's opinion stated vague limitations in standing and sitting and his lifting limitation** is covered by the claimant's determined residual functional capacity. Additionally, Dr. Johnson makes a conclusory statement reserved for the Commissioner. Dr. Johnson's conclusory opinion is not well supported and is given little weight.

(Doc. 10, p. 20)(bold added)  The bold text above provides sufficiently "good reasons" for not

giving Dr. Johnson's opinion controlling weight, reasons that would be clear to any subsequent reviewer who might read those letters. More particularly, Dr. Johnson's use of the "vague" expression "significant limitation" in the two letters at issue do not provide the necessary duration and/or frequency parameters for the exertional limitations specified. In short, every disability determination is based on what the claimant's limitations/conditions are, and how much those limitations/conditions affect the claimant's ability to work during the course of a normal 8-hr. workday. Dr. Johnson's "vague" expression "significant limitation" fails at the most rudimentary level of disability determination process, and the ALJ's characterization of Dr. Johnson's opinion as "vague" is clear on its face.

The next question is whether the ALJ's decision to give Dr. Johnson's opinion "little weight"is supported by substantial evidence. The Magistrate Judge notes as an initial matter that plaintiff does not argue that the weight the ALJ gave to Dr. Johnson's was not supported by substantial evidence. The district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)("[W]e decline to formulate arguments on [appellant's] behalf"). Consequently, this argument is waived. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed.Appx. 540, 543 (6th Cir. 2014)(citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Having failed to raise this argument in this proceeding, the argument is waived. However, the Magistrate Judge will address it anyway for the sake of completeness.

As discussed above at pp. 3-5, Dr. Johnson's records do not provide any medical evidence

relevant to the standing, sitting and lifting limitations asserted, objective or otherwise. Complaints of hemorrhoids, rectal pain and bleeding, sinus congestion, coughs, fevers, pain, tenderness, sores on the side of the head, facial weakness and headaches, twitching mouth, ear pain, difficulty sleeping, requests to complete disability papers, prescription refills, "jock itch," cracked skin, and allergies have nothing whatsoever to do with joint pain. Dr. Johnson's one-time treatment of plaintiff for knee pain is not relevant because Dr. Johnson clarified his first letter in the second by adding that he was referring "specifically [to] the pelvis and hips" – not knees. Finally, although Dr. Johnson refers to Still's Disease in his clinical notes on four occasions in the nearly two years he treated plaintiff (Doc. 10, pp. 579, 581, 587, 590), those clinical notes appear to be based solely on plaintiff's subjective complaints as evidenced by Dr. Johnson's repeated mistaken reference to 2004 as the year of onset. In short, apart from the normal July 20, 2011 CT scan of plaintiff's head, there is no objective medical evidence in the record attributable to Dr. Johnson, or upon which it can be determined that Dr. Johnson based his opinion.

As shown above, the ALJ gave "good reasons" for giving Dr. Johnson's medical opinions little weight, and the ALJ's decision to give Dr. Johnson's opinion little weight is supported by substantial evidence. Consequently, plaintiff's first argument in his third claim of error is without merit.

Plaintiff's second argument in his second claim of error is that the ALJ erred in not making a "a reasonable effort to recontact" Dr. Johnson for clarification with respect to his statement that plaintiff "has been . . . in the past and remains in a chronic disabled state," an opinion, as the ALJ noted correctly, was a "conclusory statement on an issue reserved for the Commissioner." (Doc. 10, p. 20) Plaintiff argues that the ALJ was required under SSR 96-5p to "recontact" Dr. Johnson for purposes of clarification.

12

The Act's grant of subject matter jurisdiction only permits judicial review of "the final decision of [the Commissioner] made after a hearing." 42 U.S.C. § 405(g). Judicial review of claims arising under the Act is available only after the Commissioner renders a "final decision" on the appellant's claim. *See Heckler v. Ringer*, 466 U.S. 602, 605 (1984); *Califano v. Sanders*, 430 U.S. 99, 108 (1977)(citations omitted). A claimant receives a final decision from the Commissioner after he exhausts all administrative appeals of an adverse administrative determination. 42 U.S.C. § 1395-w-22(g); 42 C.F.R. § 422.560.

This issue pertaining to the ALJ's treatment of Dr. Johnson's opinion was raised before the Appeals Counsel as follows: "Treating physician Dr. Johnson issued two statements opining that the claimant is disabled. Although this issue is reserved to the Commissioner, the ALJ erred by failing to give proper consideration to his opinion based on his treatment record." (Doc. 10, p. 227) The issue raised in the Appeals Counsel has nothing to do with the ALJ's alleged failure to recontact Dr. Johnson. Because the issue pertaining to the ALJ's alleged failure to recontact Dr. Johnson was not raised in the proceedings below, the issue has not been exhausted and, therefore, not properly before this court on judicial review.

Plaintiff's third claim of error is without merit for the reasons explained above.

### 4. Whether the ALJ Erred in Not Performing a Proper Credibility Analysis
### (Doc. 12-1, pp. 10-12)

Plaintiff argues in his fourth claim of error that the ALJ erred in not performing a proper credibility analysis as required under SSR 97-7p. Plaintiff makes/implies the following arguments in support of his fourth claim of error: 1) the ALJ erred by "merely stat[ing] that he used the criteria in SSR 96-7p in reaching his decision" rather than stating specifically "the weight he gave to the claimant's statements and the reasons for that weight"; 2) the ALJ's statement, "After careful

13

consideration of the evidence . . . the intensity, persistence and limiting effects of [plaintiff's] symptoms are not credible" constituted an impermissible "single, conclusory statement" as to plaintiff's credibility; 3) the ALJ erred by "placing excessive emphasis on [plaintiff's] minimal activities and by mischaracterizing th[ose] . . . activities," and by mistakenly equating those activities to the demands of a full-time work schedule.

The ALJ is required to "explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec*, 486 F.3d 234, 248 (6th Cir. 2007)(quoting Social Security Ruling 96–7p, 1996 WL 374186, at *2 (SSA)). SSR 96–7p describes a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms. SSR 96–7p, 1996 WL 374186 at * 3 (SSA). "[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Calvin v. Comm's of Soc. Sec.*, 437 Fed.Appx. 370, 371 (6th Cir. 2011)(quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

The ALJ correctly identified the two-step process set forth in SSR 96-7p. (Doc. 10, pp. 17-18) However, the ALJ did not "merely state that he used the criteria" as plaintiff asserts. Having identified the required two-step process, the ALJ followed with a meticulous review of the entire record, in advance of which he drew the following up-front, summary conclusion: "After careful consideration of the evidence, the undersigned finds . . . the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are

inconsistent with the above residual functional capacity assessment." (Doc. 10, p. 18) The ALJ's statement above was not a "conclusory statement" of plaintiff's credibility as plaintiff contends. A plain reading of the ALJ's assessment reveals that his up-front, summary conclusion was based on the analysis that followed. (Doc. 10, pp. 18-20)

Following his up-front, summary conclusion, the ALJ conducted an in-depth review of the medical record of evidence – condition by condition, symptom by symptom, doctor by doctor, assigning specific weights to the opinions of those doctors who rendered opinions. (Doc. 10, pp. 18-20) The ALJ also addressed plaintiff's testimony at the hearing, including his testimony about his medical history, his drug and alcohol use, symptoms and limitations. (Doc. 10, p. 20) (The ALJ previously had addressed plaintiff's activities in daily living. (Doc. 10, pp. 15-16)) At the conclusion of this analysis, the ALJ determined:

> The Claimant's impairments do cause significant limitations, but between the medical evidence of record and his abilities to perform many activities of daily living (i.e., prepare meals, drive, watch television), the above residual functional capacity is determined appropriate.

(Doc. 10, p. 20)

Next are plaintiff's arguments that the ALJ placed excessive emphasis on plaintiff's activities of daily living, and that the ALJ mischaracterized those activities. Plaintiff does not support either of these arguments with any supporting factual allegations, *i.e.*, how the ALJ overemphasized plaintiff's activities of daily living, or how he mischaracterized those activities. In short, these arguments are nothing more than naked allegations, and are waived for reasons previously explained above at p. 11.

Finally, plaintiff argues that his activities of daily living do not "equate to the demands of a full-time work schedule." There is nothing in the ALJ's decision that even remotely suggests that

15

the ALJ equated plaintiff's activities of daily living to the demands of a full-time work schedule. The ALJ used these activities in the course of his credibility analysis in determining that plaintiff's activities of daily living did not support the intensity, persistence, and functional limitations alleged. This is precisely what the ALJ was supposed to do in his credibility analysis – this is precisely what the ALJ did.

For the reasons explained above, plaintiff's fourth claim of error is without merit.

### IV. RECOMMENDATION

For the reasons explained above, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 12) be **DENIED** and the Commissioner's decision **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 27th day of January, 2016.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge